IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LATASHA M. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00070 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending that I grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment/Motion to Remand, and affirm the final decision of the Commissioner. The R&R was filed on January 5, 2015, and Plaintiff Latasha M. Kelly ("Plaintiff") filed objections on January 15. The Commissioner did not respond in any fashion, and the matter is now ripe for review. See Fed. R. Civ. P. 72(b). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's objections, adopt the R&R of the Honorable Joel C. Hoppe, grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment/Motion to Remand, and affirm the final decision of the Commissioner.

I. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On January 21, 2011, Plaintiff filed an application for a period of disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), and supplemental security income pursuant to Title XVI. See 42 U.S.C. §§ 401–433, 1395−1395ccc. (See R. 250–273.) In

her application, Plaintiff alleged that she had been disabled since December 20, 2010,[1] due to her eyesight and migraines. (See, e.g., R. 58, 208, 222–23, 225, 228, 246.) The Commissioner denied Plaintiff's claims initially on January 25, 2010, and again upon reconsideration on August 15, 2011. (See R. 58–68, 79–94.)

On August 16, 2012, Plaintiff appeared with her attorney before Administrative Law Judge Drew A. Swank ("the ALJ"). (R. 13.) Only Plaintiff testified at the hearing. (R. 34–57.) In a written decision dated September 7, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (See generally R. 13–25.) He found that Plaintiff has "vision impairment [and] affective disorder." (R. 15 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) ALJ Swank found that Plaintiff did not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, subject to some nonexertional limitations. (R. 17). Specifically, the ALJ determined that Plaintiff "should avoid concentrated exposure to hazards due to her vision impairment," and he limited her "to simple, unskilled work with occasional contact with the general public." (Id.) He also concluded that Plaintiff "is able to meet the intellectual and emotional demands of at least unskilled, competitive remunerative work on a sustained basis. She is capable of understanding, remembering, and carrying out simple instructions, making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decisions), responding

---

[1] At her hearing before the Administrative Law Judge, Plaintiff amended her disability onset date to January 10, 2012. (R. 13, 38.)

appropriately to supervision, coworkers, and usual work situations, and dealing with changes in a routine work setting." (Id.) Although the ALJ determined that Plaintiff was not capable of performing past relevant work, he did conclude, "There are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 23–24 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).) Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Act. (R. 27.) The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner on October 11, 2013. (R. 1–4.)

On December 9, 2013, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner. (Compl. [ECF No. 1].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration. Plaintiff and the Commissioner filed cross-motions for summary judgment. (Pl.'s Mot. Summ. J., Mar. 12, 2014 [ECF No. 10]; Def.'s Mot. Summ. J., June 17, 2014 [ECF No. 12].) On January 5, 2015, Judge Hoppe filed his Report and Recommendation, recommending that I affirm the final decision of the Commissioner. (R&R, Jan. 5, 2015 [ECF No. 14].) On January 15, 2015, Plaintiff filed objections to the R&R. (Pl.'s Obj., Jan. 15, 2015 [ECF No. 15] [hereinafter "Pl.'s Obj."].) The Commissioner did not respond, and the matter is now ripe for review.

## II. STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2014). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary," Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589), or the secretary's designate, the ALJ, Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

### III. DISCUSSION

Plaintiff's first objection to Judge Hoppe's R&R is that the ALJ, and thus Judge Hoppe, "failed to properly weigh the medical evidence and failed to property determine Ms. Kelly's RFC." (Pl.'s Obj. pg. 2.) In support of this argument, Plaintiff makes two points: first, the ALJ

improperly rejected parts of Plaintiff's treating physician's opinions; and second, the ALJ improperly discounted the opinions of Plaintiff's treating therapist.

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. This is so because "a treating physician's opinion is especially valuable . . . ." Morgan v. Barnhart, 142 F. App'x 716, 727 (4th Cir. 2005). Treating physicians:

> [A]re likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). Conversely, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001); see also Craig, 76 F.3d at 590 (finding that "if a physician's

- 5 -

opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

Of course, a medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. See 20 C.F.R. § 404.1527(e)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. See 20 C.F.R. § 404.1527(d)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. See 20 C.F.R. § 404.1527(d)(4).

In the present case, the ALJ rejected Dr. Trost's opinion that Plaintiff is totally disabled because that opinion "is not supported by the longitudinal record with its limited findings and generally routine and conservative treatment, including [Dr. Trost's] own treatment notes as well as [Plaintiff's] noncompliance with treatment." (R. 23.) Dr. Trost saw Plaintiff only twice[2] over a six-month period (see R. 376–378; 519–20) before opining on her level of functioning, a length of time that is typically insufficient to invoke the deference of the treating physician rule. See, e.g., 20 C.F.R. § 416.902 (defining "treating source"); Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986) ("[T]he opinion of a treating physician is entitled to more weight because it reflects a judgment based on continuing observation *over a number of years*." (emphasis added)); Hall v. Colvin, Case No. 7:12-cv-83, 2013 WL 3064012, at *2 (E.D.N.C. June 18, 2013) (holding that physician who saw the plaintiff twice in three months did not qualify as treating physician); Poteat v. Colvin, Case No. TMD 11-3486M, 2013 WL 2436387, at *3 (D. Md. June 3, 2013); Sims v. Astrue, Case No. JKS-09-3195, 2011 WL 1231157, at *2 (D. Md. Mar. 29, 2011) (holding that a physician who saw the plaintiff "twice, over an eight month period" was

---

[2] Plaintiff did return for a follow-up visit with Karen Jones, F.N.P., approximately two months after her initial appointment with Dr. Trost. (R. 375.)

- 6 -

not a treating physician). Moreover, the ALJ never stated that he considered Dr. Trost a "treating physician." Therefore, Plaintiff's objection rests on an assumption that is not factually supported by the Record.

Even if the ALJ did consider Dr. Trost as a treating physician, there is substantial evidence in the Record to support his decision to discount Dr. Trost's opinions in part. First, as the ALJ accurately pointed out, Dr. Trost's treatment notes contain very little in the way of overall findings. The most that can be said for Dr. Trost's findings are that he found that Plaintiff's "affect is constricted and mood is dysthymic." (R. 377.) Although Plaintiff did report some trouble trusting people, Dr. Trost did not characterize it as "paranoia." (R. 378.) The remainder of his findings were unremarkable. He found Plaintiff's attitude was "appropriate, pleasant, and cooperative." (R. 377–78.) "Her thought process [was] overall linear and goal directed." (R. 378.)

Seven months later, Dr. Trost stated that he was leaning towards changing her diagnosis to bipolar, given the cyclicity of her moods. (R. 519.) Notably, he noted that Plaintiff ran out of Zoloft a month prior to their appointment. Despite being without her mediation for a month, Plaintiff did not report any dramatic change in her mood or how she felt. This supports the ALJ's conclusion that Dr. Trost's findings were limited and generally routine, and that his findings were based primarily on Plaintiff's subjective complaints and not a "longitudinal record" of his own findings. (R. 23.)

Plaintiff also argues that the ALJ placed improper emphasis on Plaintiff's spotty track record in regards to her medication. She argues that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" Pate-Fires v. Astrue, 564 F.3d 935,

945 (7th Cir. 2011) (quoting Mendez v. Chater, 943 F. Supp. 503, 508 (E.D. Pa. 1996)). While this is an appealing argument, the Record simply does not bear it out its applicability in the present case. It is true that the Record makes reference to Plaintiff's "paranoia" (see R. 501, 504), but there is no indication that Plaintiff skipped her medication because of her paranoia. In fact, every instance of Plaintiff skipping her medication in the Record is explained because she ran out of it and did not bother to refill her prescription. (See, e.g., R. 52, 375, 519.) At no point did any physician opine that Plaintiff's paranoia was responsible for her noncompliance. In fact, during Plaintiff's three months of progress notes at Support Systems, LLC, the staff repeated noted that Plaintiff was "receptive to" their services. (See R. 522–61.) Thus, the Record simply does not support that Plaintiff's noncompliance with her pharmacological treatment was related to her mental impairments.

Plaintiff attempts to avoid this by arguing, "[T]he conflicting evidence was never considered by the ALJ," and, "This Court cannot make a factual finding that Ms. Kelly's non-compliance was not due to her impairments when the ALJ never made a finding to this effect." (Pl.'s Obj. pg. 4.) That argument, however, vastly overstates the Record. There is *no evidence* that Plaintiff's paranoia ever extended to her pharmacological treatment. Plaintiff's Record is crystal clear—her paranoia extended only to her "treatment team." (R. 504.) While it is true that an ALJ's decision may only be affirmed upon the reasons he gave, Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988), neither the ALJ, nor the Magistrate Judge, nor the District Court are required to make conclusions based on unsupported factual allegations. There is no evidence that Plaintiff's paranoia contributed to her medication noncompliance, and thus the ALJ was not required to consider such nonexistent evidence in reaching his conclusion.

Plaintiff next objects to the ALJ's decision to reject "the opinions of QMHP Arnold and LMHP Whittakes because they [were] not supported by the longitudinal record." (R. 23.) Additionally, Plaintiff objects to the ALJ's decision not to afford controlling weight to Ms. Arnold's opinion because she is not an acceptable medical source. (See Pl.'s Obj. pg. 6.) The applicable Regulations permit reference to "other sources to show the severity of [a claimant's] impairment(s) and how it affects [his/her] ability to work." 20 C.F.R. § 404.1543(d). Regardless of its source, every medical opinion is to be reviewed and considered. See id. § 404.1527(c).

The same evidence that justified overruling Dr. Trost's opinions justifies rejecting Ms. Arnold's opinion of Plaintiff's functional limitations. The Record establishes that the ALJ reviewed and considered the opinions of Plaintiff's treating therapist, Ms. Arnold. Like Dr. Trost's opinion, however, her ultimate conclusion is at odds with Plaintiff's longitudinal record. Ms. Arnold opined that Plaintiff was "markedly limited" in thirteen out of twenty categories, and moderately limited in the remaining seven. (R. 502–04.) By contrast, Dr. Trost found Plaintiff to be mildly limited in six, moderately limited in eight, and markedly limited in six. (R. 511–13.) Moreover, Plaintiff's treatment notes from Support Services, LLC, vary between noting that Plaintiff was "receptive to services" (R. 522–26, 530, 533–35), "motivated" and "ready for services" (id. 537, 539–545, 559), or in a "good mood," "excited," or "in good spirits" (id. 529, 539–545). On a handful of occasions, Plaintiff's treatment notes indicate a depressed mood (id. 538, 547–49), but the vast majority of the notes indicated a generally positive outlook and moderate coping skills, findings which are markedly at odds with Ms. Arnold's much more dour conclusion in her Impairment Questionnaire.

On the whole, I cannot say whether Dr. Trost's and Ms. Arnold's conclusion regarding Plaintiff's functional limitations are correct. I can, however, say that there is substantial

evidence in the Record to support the ALJ's decision. At this stage, that is the standard that must control. See Walker v. Bowen, 834 F.2d 635, 639–40 (7th Cir. 1987) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)."); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Plaintiff's objection will be overruled.

Plaintiff next objects to the ALJ's RFC determination, arguing that the ALJ did not adequately explain his conclusion with reference to the Record. The Court of Appeals has outlined the necessary precursors to review of an ALJ's decision:

> A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted). The "rare circumstances" where remand is not appropriate include instances where "the record provides 'an adequate explanation of [the Commissioner's] decision.'" Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)).

I cannot agree with Plaintiff's contention that the ALJ "impermissibly relied on his lay judgment of the records to make his RFC finding despite the expert opinions from the treating sources who considered the same evidence." (Pl.'s Obj. pg. 8.) The ALJ's decision is replete with references to the Record that underscore the ALJ's RFC determination. (See R. 17–23.) While the ALJ's decision may not be in an ideal format or may not be presented in a way best suited to review, I cannot say that the ALJ made up the RFC from whole cloth. The lack of a

medical source to confirm the ALJ's RFC is not, as Plaintiff would have me hold, fatal to the ALJ's determination. See Koonce v. Apfel, Case No. 98-1144, 1999 WL 7864, at *4 (4th Cir. Jan. 11, 1999) ("The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects."). In this case, it was appropriate for the ALJ to base his conclusions primarily on Plaintiff's activities of daily living, since the majority of the medical opinions offered by Plaintiff were not supported by the Record. Plaintiff's objection will be overruled.

Plaintiff next objects to the ALJ's decision that she was less than credible. "Reviewing courts owe deference to factual findings, assessing them only to determine whether they are supported by substantial evidence. When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting NLRB v. Air Products & Chemicals, Inc., 717 F.2d 141, 145 (1951)). "Exceptional circumstances include cases where 'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Environmental Servs., Inc., 5. F3d 923, 928 (5th Cir. 1993)). Accord Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014).

In the present case, the ALJ adequately and sufficiently explained his rationale for holding that Plaintiff was less than credible. First, she misrepresented the frequency of her visits with Dr. Trost. (R. 22, 47.) Second, she falsely asserted that she had not used any illegal drugs since January 2012, although she tested positive for marijuana on March 31, 2012. (R. 22, 402.) Third, she testified that she took her "prescribed medication every single day from January 10, 2012," until August 16, 2012, when that statement is plainly belied by the Record, including a

one-month lapse within two months of the hearing before the ALJ. (R. 22, 43–44, 375, 519.) Even without relying on Plaintiff's noncompliance with her medication, see supra pgs. 8–9, there is substantial evidence in the Record to conclude that Plaintiff is less than credible, and the ALJ's decision on this point will not be disturbed.

Finally, Plaintiff objects to the ALJ's reliance on the vocational grids as opposed to a vocational expert. (See Pl.'s Obj. pg. 10–11.) The Medical-Vocational Guidelines ("the grid tables"), 20 C.F.R. Part 404, Subpart P, Appendix 2, are tables that "indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity . . . ." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). Each grid, however:

> Considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of [her] disability. Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines.

Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)).

"The Fourth Circuit has held that 'not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment'' so as to preclude the use of the grid tables." Stonestreet v. Astrue, Case No. 5:12cv111, 2014 WL 992098, at *9 (W.D. Va. Mar. 14, 2014) (Report & Recommendation) (quoting Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984) (per curiam)), adopted by id., 2014 WL 992098, at *1. Here, the ALJ expressly found that Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (R. 24.) Plaintiff disagrees, arguing instead that her inability "to

respond appropriately to co-workers, supervisors, and the public on a sustained basis precludes" reliance on the grid tables. (Pl.'s Obj. pgs. 10–11.)

Plaintiff misstates the ALJ's actual conclusion. He concluded that:

> [Plaintiff] is able to meet the intellectual demands of at least unskilled, competitive, remunerative work on a sustained basis. She is capable of understanding, remembering, and carrying out simple instructions, making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decision), responding appropriately to supervision, coworkers, and usual work situations, and dealing with changes in a routine work setting.

(R. 17. Compare id., with Pl.'s Obj. pgs. 10–11.) This conclusion mirrors the guidance found in SSR 85-15, on which Plaintiff relies, which *permits* reliance on the grid tables. Moreover, the ALJ only limited to Plaintiff to "occasional contact with the general public." (Id.) Thus, it appears Plaintiffs objection to the use of the grid tables is merely a repackaging of her earlier objection to the ALJ's RFC. For the reason stated herein, the ALJ's RFC is supported by substantial evidence. On this RFC, reliance on the grid tables was appropriate, and Plaintiff's objection will be overruled

## IV. CONCLUSION

For the reasons stated above, the ALJ's determination is supported by substantial evidence. I have reviewed the remainder of the Record for clear error. Finding none, Plaintiff's objections will be overruled, her Motion for Summary Judgment will be denied, the Commissioner Motion for Summary Judgment will be granted, and this case will be dismissed.

- 13 -

Case 4:13-cv-00070-JLK-JCH   Document 16   Filed 06/16/15   Page 13 of 14   Pageid#: 684

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

ENTERED this 16th day of June, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE